IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JOSHUA JAY WILLIAMS                                                                    PLAINTIFF

v.                          Civil No. 5:14-cv-05370-PKH-MEF

NURSE RHONDA BRADLEY                                                         DEFENDANT

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action filed by the Plaintiff, Joshua Jay Williams, pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis*.

Plaintiff is currently incarcerated in the East Arkansas Regional Unit of the Arkansas Department of Correction (ADC). The events that are the subject of this case occurred while he was incarcerated in the Washington County Detention Center (WCDC). Plaintiff alleges his constitutional rights were violated by Defendant's deliberate indifference to his serious medical needs. He also maintains Defendant breached the terms of the contract between Southern Health Partners, Inc., and Washington County.

Defendant filed a Summary Judgment Motion (Doc. 26) on October 26, 2015. A hearing was held on March 17, 2016, to allow the Plaintiff to testify in response to the Motion. Plaintiff testified by video conference call. The Motion (Doc. 26) is now ready for decision.

### I. BACKGROUND

Plaintiff was booked into the WCDC on March 10, 2014. He remained incarcerated there for about a year and ten months.

Plaintiff testified that the facts as set forth by the Defendant in her statement of facts (Doc. 28) are accurate. For purposes of discussion, the Court will set forth those facts. On

-1-

March 11, 2014, Plaintiff submitted a medical request via the electronic kiosk located in the pod. He said something was wrong with his head and heart. He submitted another request on March 12 saying that he told the nurse about his head and heart. That day, he was added to the nurse call list.

Plaintiff was seen by Nurse Bradley on March 14, 2014. He reporting having a heart murmur and asthma. He stated his prescription records were at Baker's Pharmacy and that his doctor was Dr. Garcia. Plaintiff also informed Nurse Bradley that he had been treated two months ago for a head injury but did not follow-up. Plaintiff indicated he had been seen at the Ashley County Medical Center (ACMC).

Nurse Bradley submitted requests for his records from Dr. Garcia and Baker's Pharmacy. Dr. Garcia's office informed her that Plaintiff had no current prescriptions for asthma or a heart murmur. Similarly, Baker's Pharmacy advised Nurse Bradley that Plaintiff has had no inhaler or heart murmur prescriptions for the past three years. Plaintiff also testified he had not been on any medication for three years.

On March 15, 2014, Plaintiff was prescribed Tylenol. He cancelled the prescription to avoid paying the $3 because he did not feel that it was appropriate treatment for his condition.

On March 16, 2014, Plaintiff submitted a medical request complaining of head pain. Plaintiff was placed on the list to see the doctor. On the evening of March 16, Plaintiff submitted another request complaining of a headache.

On March 17, 2014, Plaintiff was added to the nurse call list. He was prescribed Ibuprofen 200 mg to be administered as needed for pain.

AO72A
(Rev. 8/82)

On March 18, 2014, Plaintiff was seen by the doctor. Plaintiff informed the doctor that he had been seen at ACMC for a CT scan. On March 18, Nurse Bradley informed that Plaintiff that the imaging department of ACMC said they had no records of a CT or MRI of Plaintiff's head. The doctor wrote no further orders for the Plaintiff to be transported to an outside specialist for headaches.

Plaintiff submitted another medical request on March 18 complaining about a headache. Nurse Bradley responded by noting the Plaintiff had already been seen by the doctor that day. Plaintiff submitted another request stating that although he was seen he was still untreated for his head condition.

On March 21, 2014, Plaintiff submitted another medical request. The nurse responded by saying he had been seen by the doctor several times. Plaintiff continued to receive Ibuprofen 200 mg from March 17, 2014 to April 15, 2014.

Plaintiff testified that his asthma comes and goes. Plaintiff testified Nurse Bradley denied him medication solely because he had not been on medication for the past three years not based on his current condition.

In 2013 or 2014, Plaintiff testified he had a seizure in jail and was sent to the hospital. Because of the seizure, he testified the doctor at ACMC ordered blood drawn and some kind of a scan.

On November 1, 2014, Southern Health Partners, Inc. (SHP) became the contract provider for medical care to detainees of the WCDC. During the night of November 11, 2014, Plaintiff alleges he woke up with a serious pain in his head and began coughing up blood. The next day, Plaintiff continued to spit up blood. He indicates he told multiple staff members and

also submitted a grievance via the kiosk system stating that he was in serious need of emergency medical care.

On November 12, 2014, Plaintiff submitted a request complaining of head, throat and body pain. He was added to the nurse call list.

On November 13, 2014, Plaintiff put in a request complaining of headache and coughing up bloody mucous. Late in the evening on November 16, 2014, or in the early morning hours on November 17, 2014, Plaintiff maintains it became hard for him to breathe. Plaintiff informed Deputy Garcia about his difficulty breathing and was told by Deputy Garcia that he would be back with the nurse. Deputy Garcia did not return. The following morning, Plaintiff asked Deputy Garcia why he did not return with the nurse and was told that the nurse on duty refused to see the Plaintiff.

Between November 12 and November 18, 2014, Plaintiff alleges that he repeatedly reported that he was spitting and coughing up blood but no nurse came to see him and no officer took him to the infirmary for emergency care. Plaintiff alleges that this failure to treat him continued for more than one hundred hours until he was finally seen on November 18.

On November 18, 2014, Plaintiff was seen by Nurse Bradley and evaluated for upper respiratory symptoms. Plaintiff testified that he did not believe that Nurse Bradley seeing him six days after he submitted a request stating he was spitting up blood was timely. He testified that Nurse Bradley thought he was exaggerating. It was his belief that a nurse should not treat a patient based on what she thinks.

Nurse Bradley completed a patient clinical data form noting these symptoms: runny nose, nasal congestion and drainage, productive cough, yellow secretions without the presence of

-4-

blood, and sore throat. Nurse Bradley noted that both lungs were clear. She advised the Plaintiff to increase his fluid intake. After nurse call, Plaintiff stated the sick call was a waste of his "f------ time."

On November 21, 2014, Plaintiff submitted another request stating he had increased his fluid intake to ten cups of water a day, but he was still sick. On November 24, 2014, he was placed on nurse call. On November 25, 2014, Plaintiff refused nurse call. Plaintiff testified he refused nurse call because Nurse Bradley never gave him proper treatment and he did not see why he should go and see her again and pay the $5 charge. That evening, Plaintiff testified he woke up at night spitting blood. Plaintiff testified he stayed sick for another three of four days. One of his friends bought him some cough drops.

Plaintiff testified that Nurse Bradley would not treat him, cussed at him, and treated him badly. Plaintiff filed this complaint on December 4, 2014. (Doc. 1)

Plaintiff second claim is that Nurse Bradley breached the contract between SHP and Washington County. He testified that Nurse Bradley violated rules that are supposed to be for the protection of the inmates.

## II. APPLICABLE STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that

a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment. *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### III. DISCUSSION

Defendant contends she is entitled to summary judgment because she was not deliberately indifferent to Plaintiff's serious medical needs. She also contends the Plaintiff has no standing to bring a breach of contract claim against her.

**A. Section 1983; Deliberate Indifference to Serious Medical Needs**

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the defendant acted under color of state law and that he violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999). The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986).

"Where a prisoner needs medical treatment prison officials are under a constitutional duty to see that it is furnished." *Crooks v. Nix*, 872 F.2d 800, 804 (8th Cir. 1989) (*citing Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). The Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard. *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006). "Deliberate indifference to a prisoner's serious medical needs is cruel and unusual punishment in violation of the Eighth Amendment." *Gordon ex rel Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006) (*citing Estelle*, 429 U.S. at 106)).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir.1997)).

A serious medical need is one diagnosed as requiring treatment, or one so obvious even a lay person would recognize the necessity for a doctor's attention. *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995).

"Deliberate indifference is equivalent to criminal-law recklessness, which is more blameworthy than negligence, yet less blameworthy than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotation marks and citation omitted). The deliberate indifference standard is not met by the exercise of professional judgment in refusing to implement an inmate's requested course of treatment. *Vaughn v. Gray*, 557 F.3d 904, 908-09

(8th Cir. 2009). Nor is the standard met by demonstrating that jail medical staff committed medical malpractice. *Jackson v. Buckman*, 756 F.3d 1060, 1065-66 (8th Cir. 2014).

Plaintiff has "no constitutional right to receive a particular or requested course of treatment." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Taylor v. Bowers*, 966 F.2d 417, 421 (8th Cir. 1992).

"The inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010) (citation omitted). "Grossly incompetent or inadequate care" will suffice only if "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany*, 132 F.3d at 1242.

"When the inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, the objective seriousness of the deprivation should also be measured by reference to the *effect* of delay in treatment." *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (internal quotations and citations omitted). "To establish this effect, the inmate must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." *Id.*

With respect to the March medical requests, Plaintiff submitted a request on March 11, 2014, saying something was wrong with his head and heart. On March 14, Nurse Bradley requested medical records from Plaintiff's pharmacy and his doctor. It was determined that Plaintiff had not had any prescriptions for these conditions in three years. Plaintiff agreed that

-8-

AO72A
(Rev. 8/82)

he had not had medication for three years. Plaintiff was prescribed Tylenol on March 15 and cancelled that prescription because he did not believe it was the correct medication for his conditions. Plaintiff was prescribed Ibuprofen on March 17. On March 18, Plaintiff was seen by the doctor. When Plaintiff informed the doctor that he had been seen at the ACMC and had blood drawn and a scan done, Nurse Bradley contacted ACMC in an effort to obtain these records. She was advised that no such records existed.

I do not believe there is any genuine issue of material fact as to whether or not Nurse Bradley was deliberately indifferent to the Plaintiff's serious medical needs. She responded promptly to each request, submitted requests for his records from his pharmacy, his doctor, and the hospital he claimed to have been treated at. Medication was prescribed him for pain relief. The medication was changed when Plaintiff objected. Plaintiff was also seen by the doctor who prescribed no medication, ordered no tests, and made no referrals to outside doctors or facilities.

Plaintiff also contends Nurse Bradley cursed at him and treated him badly. While such conduct is clearly unprofessional, verbal abuse and verbal threats do not constitute a constitutional violation. *Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985). Similarly, taunts, name calling, and the use of offensive language does not state a claim of constitutional dimension. *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (inmate's claims of general harassment and of verbal harassment were not actionable under § 1983); *O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987) (verbal threats and abuse by jail officials did not rise to the level of a constitutional violation); *Martin*, 780 F.2d at 1338-1339 (being called an obscene name and threatened with adverse consequences unless he cut his hair and shaved does not state a claim of constitutional dimension); *Black Spotted Horse v. Else*, 767 F.2d 516, 517 (8th Cir.

1985) (use of racially offensive language in dealing with a prisoner does not, by itself, state a claim).

Plaintiff testified his main claim against Nurse Bradley arises out of the incidents in November, 2014. Plaintiff maintains that Nurse Bradley waiting for six days to see him after he submitted his medical request is not a timely response. He testified that he might have been injured or dead in that length of time. He points out that he was coughing up blood at the time. In his view, Nurse Bradley merely thought he was exaggerating. Plaintiff maintains she should not have gone by what she "thought" but instead should have seen him more quickly, evaluated him, and treated him.

The "Constitution does not require [detention center personnel] to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.*, 557 F.3d 628, 633 (8th Cir. 2009). The objective seriousness of delay in treatment must be measured by reference to the effect of delay, which must be shown by verifying medical evidence in the record. *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005). In evaluating a treatment delay for summary judgment purposes, the court "must accept facts as recited in prisoner affidavits as true." *Wise v. Lappin*, 674 F.3d 939, 941 (8th Cir. 2012) (*citing Tlamka v. Serrell*, 244 F.3d 628, 634 (8th Cir. 2001)). Here, there is no verifying medical evidence suggesting that a delay in treatment had an adverse effect on Plaintiff's medical condition. *Laughlin*, 430 F.3d at 929. Nurse Bradley is entitled to summary judgment in her favor on the individual capacity claims.

### B. Official Capacity Claim

Plaintiff also asserted an official capacity claim. Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels*

*Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, the official capacity claims are treated as claims against Washington County. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

"Official-capacity liability under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Turner v. Mull*, 784 F.3d 485, 490 (8th Cir. 2015)(internal quotation marks and citation omitted).

The applicable law has been summarized as follows:

> There are two basic circumstances under which municipal liability will attach: (1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with "deliberate indifference" to its known or obvious consequences. *Seymour v. City of Des Moines*, 519 F.3d 790, 800 (8th Cir. 2008). There need not be a finding that a municipal employee is liable in his or her individual capacity before municipal liability can attach. *Speer v. City of Wynne*, 276 F.3d 980 (8th Cir. 2002); *Parrish v. Luckie*, 963 F.2d 201, 207 (8th Cir. 1992) ("A public entity or supervisory official may be held liable under § 1983 even though no government individuals were personally liable"). Where an official policy is itself unconstitutional or directs employees to take unconstitutional action, no evidence beyond a statement of the policy and its exercise is necessary to establish § 1983 liability. *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 389-90 (8th Cir. 2007).

*Moyle v. Anderson*, 571 F.3d 814, 817-18 (8th Cir. 2009) (citation omitted).

In *Johnson v. Douglas County Medical Dept.*, 725 F.3d 825 (8th Cir. 2013), the Court outlined the necessary elements for establishing the existence of an unconstitutional custom. It stated:

> To establish a claim for "custom" liability, [Plaintiff] must demonstrate:
>
> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and,
>
> 3) That Plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

*Id.*, 725 F.3d at 828 (citations omitted).

Plaintiff has not alleged the existence of a policy that was the moving force behind the violation of his constitutional rights. In short, he has not pointed to "any officially accepted guiding principle or procedure that was constitutionally inadequate." *Jenkins v. County of Hennepin*, 557 F.3d 628, 633 (8th Cir. 2009). Merely alleging that procedures should be improved is insufficient. *Id*. Plaintiff has not pointed to a "deliberate choice of a guiding principle or procedure made by the municipal official who has final authority in such matters." *Id*.

As noted above, "a custom can be shown only by adducing evidence of a continuing, widespread, persistent pattern of unconstitutional misconduct." *Id*. at 634 (internal quotation marks and citation omitted). Plaintiff has not asserted facts suggesting that there was any widespread, persistent pattern of unconstitutional conduct. Nurse Bradley is entitled to dismissal of the official capacity claim.

-12-

### C. Breach of Contract

Having recommended dismissal of the only federal claim, it is appropriate to decline supplemental jurisdiction on this state law claim. 28 U.S.C. § 1367.

### IV. CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment (Doc. 26) be **GRANTED** and that Plaintiff's denial of medical care claim be **DISMISSED WITH PREJUDICE**. I further recommend that the Court decline to retain supplemental jurisdiction over Plaintiff's breach of contract claim.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 18th day of July, 2016.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)